**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:21-cv-21992-KMM

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
LOCAL 527,

      Plaintiff,

v.

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court upon Defendant's Renewed Motion for Summary Judgment (ECF No. 45), and Plaintiff's Renewed Cross-Motion for Summary Judgment (ECF No. 51). This matter has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636, by the Honorable K. Michael Moore, to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters including discovery, and for a Report and Recommendations on any dispositive matters. (ECF No. 4). Having considered the Motions, Responses, Reply, and being otherwise fully advised on the matter, the undersigned respectfully **RECOMMENDS** that Defendant's Motion be **GRANTED** and Plaintiff's Motion be **DENIED**.

## I.    BACKGROUND

Plaintiff brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking an order compelling U.S. Immigration and Customs Enforcement ("ICE") to produce records Plaintiff requested from the agency.

1

On April 20, 2020, Plaintiff submitted its first FOIA request to Defendant.[1]  (ECF No. 20 at ¶¶ 1, 2).  Plaintiff requested the current Office of Professional Responsibility Investigative Guidebook (the "Guidebook").  (*Id.* at ¶ 2).  Defendant acknowledged receipt of the request the next day.  In this acknowledgment, Defendant advised that, due to the increasing number of FOIA requests, Defendant may be delayed in processing Plaintiff's request.  (*Id.* at ¶ 4).

Three months after Plaintiff's request, Defendant provided a response to the request and produced three pages, withholding one page in part and two pages in full pursuant to 5 U.S.C. § 552(b)(7)(E) ("exemption 7(E)").  (ECF No. 45-1 at ¶ 15).  Plaintiff administratively appealed Defendant's FOIA production challenging the search and withholdings applied to the records.  (*Id.* at ¶ 16).  On October 14, 2020, the ICE Office of Principal Legal Advisor ("OPLA") adjudicated Plaintiff's appeal and remanded the appeal to the ICE FOIA office to conduct a new search and a reprocessing of records.  (*Id.*).

Plaintiff filed this lawsuit on May 27, 2021, having not received a response on remand.  On September 17, 2021, Defendant produced a copy of the Guidebook to Plaintiff with information redacted pursuant to exemption 7(E) and 5 U.S.C. § 552(b)(5).  (*Id.* at ¶ 18).  The Guidebook is, in its entirety, 129 pages; Defendant produced only 11 complete pages and 14 pages partially redacted, 104 pages were withheld entirely.  (*Id.*).  On November 17, 2021, ICE released another copy of the Guidebook, this time producing 23 pages without any redactions, 101 partially redacted pages, and 5 pages fully withheld.  (*Id.* at ¶ 19).

On March 28, 2022, Defendant filed a Motion for Summary Judgment.  (ECF Nos. 19, 19-1, 19-2).  Plaintiff filed a Cross-Motion and Response.  (ECF No. 27).  On September 9, 2022,

---

[1]  The following facts are taken from Defendant's Statement of Material Facts filed with its original Motion for Summary Judgment, (ECF No. 20), which was denied without prejudice by the undersigned.  Plaintiff did not file a Statement of Material Facts in opposition.  Accordingly, the following facts are not in dispute.

three days after Defendant filed its Response to Plaintiff's Motion and Reply in support of its own Motion, Defendant provided Plaintiff a third version of the Guidebook, releasing additional sections previously claimed to be exempt from disclosure.  (ECF No. 39 at 2).[2]  Defendant produced 37 pages in full, 88 pages in part, and withheld 4 pages in full.  (ECF No. 45-1 at ¶ 20).  Because Defendant's Motion was prematurely filed and did not address the supplemental declaration and supplemental *Vaughn* index attached to Defendant's Reply and Response, the undersigned denied Defendant's Motion for Summary Judgment without prejudice as it was filed before the factual record was developed and failed to account for the current record.  The undersigned ordered Defendant to submit the Guidebook for *in camera* review, in tandem with any later filed motion for summary judgment.

Now before the undersigned are Defendant's Renewed Motion for Summary Judgment and Plaintiff's Renewed Cross-Motion for Summary Judgment.[3]  (ECF Nos. 45, 51).

## II.   LEGAL STANDARD

Congress enacted FOIA to permit citizens to discover "what their government is up to." *Heartland All. for Hum. Needs & Hum. Rts. v. ICE*, 406 F. Supp. 3d 90, 108 (D.D.C. 2019) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).  In cases where a government agency seeks to exempt information from disclosure pursuant to one of the various FOIA exemptions, "[t]he burden is squarely on the government to prove that the information in question is covered by one of the exemptions."  *Scott v. Treasury Inspector Gen. for Tax Admin.*, No. 18-80366-CIV, 2018 WL 3689095, at *2 (S.D. Fla. June 20, 2018) (citing *Ely*

---

[2]  Citations to documents within the Court's case management and electronic case filing system (CM/ECF) refer to the pagination assigned by CM/ECF to a document (i.e., the page number assigned in the blue text imprinted across the top of the PDF) and not to a document's internal pagination.

[3]  In the Court's Order denying Defendant's Motion for Summary Judgment without prejudice, the undersigned did not dispose of Plaintiff's original Cross-Motion for Summary Judgment.  Given that Plaintiff has filed a Renewed Cross-Motion for Summary Judgment, the undersigned **RECOMMENDS** that Plaintiff's original Cross-Motion for Summary Judgment (ECF No. 27) be **DENIED, as moot**.

*v. F.B.I.*, 781 F.2d 1487, 1489–90 (11th Cir. 1986)).  FOIA's disclosure provisions are interpreted broadly, while the exemptions are construed narrowly.  *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).

"Generally, FOIA cases should be handled on motions for summary judgment." *Miccosukee Tribe of Indians of Fla. v. U.S. Dep't of Just.,* 103 F. Supp. 3d 1314, 1323–24 (S.D. Fla. 2015) (quoting *Miscavige v. Internal Revenue Serv.,* 2 F.3d 366, 369 (11th Cir. 1993)).  In analyzing and weighing the evidence in the case, the Court must determine whether the agency had an "adequate factual basis" for invoking a particular FOIA exemption.  *Id.* at 1324.  In the Eleventh Circuit "an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index, *in camera* review, *or* through a combination of these methods."  *Id.* (emphasis in original).  "Affidavits alone may be sufficient 'so long as they provide an adequate factual basis for the district court to render a decision.'"  *Id.*  "[T]his Circuit has not established a set formula or pattern for what will suffice as a *Vaughn* index.  The index usually consists of a listing of each withheld document, or portion thereof, indicating the specific FOIA exemption applicable and the specific agency justification for the non-disclosure." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1260 (11th Cir. 2008) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)).  A *Vaughn* Index may be adequate if it supplies "relatively detailed justification[s], specifically identifying the reasons why a particular exemption is relevant and correlating those claims with [a] particular part of a withheld document." *Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1179 (11th Cir. 2019) (citation and internal quotation marks omitted).

"Summary judgment for the federal agency is proper 'if the affidavits provide specific information sufficient to place the documents within the exemption category, if this information

is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Fla. Immigrant Advoc. Ctr. v. Nat'l Sec. Agency*, 380 F. Supp. 2d 1332, 1338 (S.D. Fla. 2005) (alterations omitted).

## III.   DISCUSSION

The Parties cross-move for summary judgment as to Plaintiff's single count alleged in its Complaint asserting that Defendant violated FOIA by failing to disclose responsive records. Because Plaintiff does not dispute the adequacy of the search conducted by Defendant, the cross motions turn on the adequacy of Defendant's invocation of exemption to withhold portions of the Guidebook.

Plaintiff argues three bases for summary judgment in its favor.  First, Plaintiff contends that it is entitled to summary judgment because Defendant has engaged in a pattern and practice of unreasonable delay.   Second, Plaintiff argues that the evidence advanced by Defendant to support its sequential productions and withholding therefrom contains contradictions that defeat the Court's ability to find in Defendant's favor.   Finally, Plaintiff contends that Defendant has failed to adequately support its bases for withholding portions of the Guidebook under exemption 7(E), and relatedly, that Defendant's Declaration and *Vaughn* Index are impermissibly vague.

### A.   Pattern and Practice of Unreasonable Delay

Plaintiff asserts that it is entitled to summary judgment because Defendant has acted in bad faith, demonstrated by its unreasonable delay in responding to Plaintiff's FOIA request.  Plaintiff asserts that Defendant first belatedly responded to Plaintiff's FOIA request after 90 days, beyond the statutory requirements, and then produced only three pages.  It took Defendant more than a year to produce even a redacted copy of the Guidebook; Defendant produced the current version of the Guidebook two and a half years after Plaintiff's request.  Plaintiff argues Defendant has engaged in a pattern and practice of delay and misuse of the right to withhold information under

FOIA.  As such, Plaintiff argues that this Court should enjoin ICE from asserting exemption (7)(E) and order disclosure of an unredacted copy of the Guidebook.

Defendant notes the absence of case law to support Plaintiff's argument that a delay in producing responsive documents may be grounds for compelling disclosure of exempted documents.  Defendant asserts that courts do not have jurisdiction to order exempt records to be disclosed.  Defendant argues that, because it has produced all responsive, nonexempt documents, Plaintiff's claim that Defendant's response was delayed is moot.

FOIA sets a deadline for agencies to respond to document requests: they are required to respond within 20 days of receipt.  5 U.S.C. § 552(a)(6)(A)(ii)(I).  An agency may notify a requestor that it will take an additional ten days to make a determination of whether it will release the requested documents if "unusual circumstances" justify the delay.  5 U.S.C. § 552(a)(6)(B). Defendant responded three months after receiving Plaintiff's request, which is outside the statutory window.  Defendant additionally waited a year to produce a copy of the Guidebook after OPLA remanded Plaintiff's appeal to Defendant to conduct a new search and a reprocessing of records. However, Defendant's delay in producing the Guidebook does not itself demonstrate that Defendant acted in bad faith.

"'Agency affidavits and declarations enjoy a presumption of good faith,' but [c]ourts deny summary judgment if they are called into question by contradictory evidence in the record or by evidence of bad faith."  *Sai v. Transp. Sec. Admin.*, 466 F. Supp. 3d 35, 43–44 (D.D.C. 2020), *as amended* (June 12, 2020) (alterations omitted).  "Courts routinely find that delays in responding to FOIA requests are not, in and of themselves, indicative of agency bad faith."  *Skurow v. U.S. Dep't of Homeland Sec.*, 892 F. Supp. 2d 319, 326 (D.D.C. 2012) (collecting cases).  "[T]here is nothing about the failure of an agency to produce documents promptly that would require the

agency to waive otherwise properly claimed FOIA exemptions.  An agency's failure to respond within the statutorily prescribed deadlines merely means that a requesting party may seek judicial supervision of the agency's response, as [P]laintiff has done here." *Id.*  While Defendant may have been delayed in providing the requested Guidebook, the delay above does not entitle Plaintiff to the relief sought; the cases Plaintiff advanced in support are procedurally distinguishable.

In *Munger, Tolles & Olson LLP ex rel. American Management Services LLC v. U.S. Department of the Army*, the plaintiff sought a declaratory judgment that the defendant had violated FOIA's timeliness requirements.  58 F. Supp. 3d 1050, 1054 (C.D. Cal. 2014).  This request for a declaratory judgment was independent from whether the remaining undisclosed documents were exempt from disclosure.  *Id.*

In *Hajro v. USCIS*, the plaintiff brought a claim for injunctive relief based on an alleged pattern and practice of unreasonable delay in responding to FOIA requests.  832 F. Supp. 2d 1095, 1107–08 (N.D. Cal. 2011), *rev'd in part, vacated in part*, 807 F.3d 1054 (9th Cir. 2015), *withdrawn from bound volume, opinion amended and superseded on denial of reh'g*, 811 F.3d 1086 (9th Cir. 2016), *and rev'd in part, vacated in part*, 811 F.3d 1086 (9th Cir. 2016).  The remedy sought for that claim was injunctive relief, not disclosure of exempted information.  *See id.* at 1108. "Injunctive relief is warranted in order to remedy a pattern and practice of FOIA violations by an agency where there is 'a probability that alleged illegal conduct *will recur in the future*.'"  *Id.* (emphasis added).  Plaintiff has brought no comparable claim in this action.

Similarly, in *Long v. IRS*, the plaintiffs requested injunctive relief to prevent prolonged delays by the IRS in responding to the plaintiffs' FOIA requests.  693 F.2d 907, 909 (9th Cir. 1982).  The Ninth Circuit found that injunctive relief was appropriate in that case "to prevent the prolonged delays and repeated litigation over disclosure of the same type of documents *in the*

*future*." *Id.* at 910 (emphasis added).  The authority advanced in Plaintiff's Motion does not support its claim for relief herein.

### B.      Contradictions in the Record

Defendant's exemptions are supported by three declarations.  As Plaintiff notes, each declaration attested that *all* nonexempt materials had been properly segregated and produced; yet, ICE's iterative production expanded on the previous ones.  Plaintiff contends the inherent contradiction among the declarations calls into question the credibility of ICE's evidence such that it should be afforded no deference.

Defendant argues that it exercised its discretion to release information previously withheld without conceding the previous withholdings were inappropriate.  Defendant notes that the only dispute that remains before this Court relates to those portions of the Guidebook it has *not* produced, and the evidence with respect to the exempted material uniformly defends its basis for exemption; there is no contradiction with respect to the evidence advanced to support these exemptions.  Defendant additionally asserts that its subsequent release of more information is not grounds for an adverse finding against it.

Defendant's voluntary release of previously withheld sections should not be the basis for denying its Motion.  "[I]t would work mischief in the future by creating a disincentive for an agency to reappraise its position, and when appropriate, release documents previously withheld. It would be unwise for us to punish flexibility, lest we provide the motivation for intransigence." *Mil. Audit Project v. Casey*, 656 F.2d 724, 754 (D.C. Cir. 1981); *Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 26 (D.D.C. 2019) ("But the fact that an agency discovers an error in its earlier representations, and thereafter changes course, does not alone displace the good-faith presumption courts accord its declarations.").

"Furthermore, this argument is based on the perverse theory that a forthcoming agency is less to be trusted in its allegations than an unyielding agency." *Mil. Audit Project*, 656 F.2d at 754. Regrettably, Defendant's initial production withheld significantly more pages and portions of the Guidebook than its most recent production. However, since its initial disclosure, Defendant has undertaken significant effort to release additional portions without court intervention. This effort to disclose additional portions should not be held against Defendant. *See Scott v. Internal Revenue Serv.*, No. 18-CV-81750, 2021 WL 256418, at *30 (S.D. Fla. Jan. 26, 2021), *reconsideration denied*, No. 18-CV-81750, 2021 WL 2072527 (S.D. Fla. May 24, 2021), *and appeal dismissed*, No. 21-12459-DD, 2021 WL 5055820 (11th Cir. Sept. 1, 2021) (finding that the IRS's later disclosure of information did not illustrate bad faith).

Plaintiff argues that by incorporating the averments of prior declarations, the current declaration falsely attests that materials previously withheld were properly segregated and exempt from disclosure, an attestation Plaintiff argues is contradicted by the subsequent disclosure of the documents. The particular language on which Plaintiff's argument depends states that "to the extent that the Court needs additional information, this declaration supplements and incorporates by reference the prior declarations" that have been submitted in this action. (ECF No. 45-1 at ¶ 6). Defendant's vague reference to other information in the record does not "rise to the level of rebutting the presumption of good faith that attaches to statements made by agency officials under penalty of perjury." *Scott*, 2021 WL 256418, at *30; *see also Fischer v. U.S. Dep't of Just.*, 723 F. Supp. 2d 104, 109 (D.D.C. 2010).

### C.      Challenges to Withheld Portions of the Guidebook

#### 1.      Deferential Standard

Exemption 7(E) authorizes the government to withhold records and documents if they were "compiled for law enforcement purposes," provided that their publication "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Defendant invokes exemption 7(E) for all redacted sections within the Guidebook, which Defendant has grouped into eight broad categories.

Before turning to whether Defendant has properly withheld sections of the Guidebook pursuant to exemption 7(E), the Court must first determine what standard of review to apply. Generally, "courts apply a more deferential standard to a claim that information was compiled for law enforcement purposes when the claim is made by an agency whose primary function involves law enforcement." *Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C. Cir. 2002). Plaintiff argues that Defendant is not entitled to this more deferential standard because Plaintiff requested the Guidebook from ICE's Office of Professional Responsibility ("ICE OPR"), not ICE. While ICE is the "largest investigative arm of DHS," ICE OPR is charged with upholding ICE's professional standards, promoting organizational integrity, and investigating allegations of serious employee and contractor misconduct. (ECF No. 45-1 at ¶¶ 27, 29).

Defendant argues that Plaintiff has not explained why ICE OPR's mission statement found in the sworn statement of Fernando Pineiro Jr., the FOIA Director at ICE, would undermine the deference due to ICE's determination that certain sections of the Guidebook fall under exemption

7(E).  Defendant asserts that ICE is due said deference because it is an agency specializing in law enforcement.

In support of Plaintiff's argument that ICE OPR is not a law enforcement agency, Plaintiff cites to Defendant's description of ICE OPR that states:

> ICE OPR is responsible for upholding the agency's professional standards through a multi-disciplinary approach of security, inspections and investigations.  OPR promotes organizational integrity by vigilantly managing ICE's security programs, conducting independent reviews of ICE programs and operations, and impartially investigating allegations of serious employee and contractor misconduct, as well as internal and external threats against ICE personnel and facilities.[4]

The Parties do not dispute that ICE "is an agency specializing in law enforcement" and, consequently, a decision from ICE would be entitled to a measure of deference.  *See Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 245 (D.D.C. 2013).

The Guidebook "provides policies, practices and procedures designed to prevent, investigate and prosecute misconduct and criminal activity within ICE."  (ECF No. 45-1 at ¶ 33).  ICE OPR is responsible for activities such as "vigilantly managing ICE's security programs" and "investigating allegations of serious employee and contractor misconduct."  (*Id.* at ¶ 29).  While ICE OPR may have human resources functions in conjunction with investigating serious misconduct within the agency, this alone does not alter the deference that is afforded to ICE as an agency specializing in law enforcement.  *See Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 15 (D.D.C. 2009) ("[T]here is no question that ICE and CBP perform law enforcement activities."); *Advancement Project v. U.S. Dep't of Homeland Sec.*, 549 F. Supp. 3d 128, 144 (D.D.C. 2021) ("ICE's central mission is to enforce immigration law, so its claims about the purpose of withheld records deserve deference.").

---

[4] (ECF No. 45-1 at ¶ 29).

Even with this deferential standard of review, however, Defendant's decision to invoke exemption 7(E) "is not a 'vacuous' one, and it does not authorize a wholesale departure from all evidentiary requirements." *Am. Immigr. Council*, 950 F. Supp. 2d at 245.

## 2.   Law Enforcement Purposes

Plaintiff argues that the information Defendant withholds does not have a nexus with law enforcement.   Specifically, Plaintiff cites to sections withheld that Plaintiff asserts are administrative in nature, such as Section 2.18 titled "Interviewing: ICE Employee Witnesses (*Administrative* Investigations)."  (ECF No. 51 at 11) (emphasis in original).  Plaintiff argues that the withheld sections pertaining to administrative functions do not address legal compliance and were thus not created for law enforcement purposes.

To fall within Exemption 7(E), the records must first meet a threshold requirement: that the records were "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  "The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal."  *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014); *Tax Analysts*, 294 F.3d at 77.  "[T]he generally accurate assumption that federal agencies act within their legislated purposes implies that an agency whose principal mission is criminal law enforcement will more often than not satisfy the Exemption 7 threshold criterion.  Thus, a court can accept less exacting proof from such an agency that the purpose underlying disputed documents is law enforcement."  *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982).  However, "not every document compiled by a law enforcement agency is compiled for a law enforcement purpose."  *100Reporters LLC v. U.S. Dep't of Just.*, 248 F. Supp. 3d 115, 159 (D.D.C. 2017).  "A record is deemed 'compiled for a law enforcement purpose' so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties and (2)

a connection between the subject of the record and a possible security risk or violation of federal law." *Long v. ICE*, 149 F. Supp. 3d 39, 48–49 (D.D.C. 2015).

The Guidebook encompasses Defendant's procedures to prevent, investigate, and prosecute misconduct internally and guides ICE OPR on how to investigate criminal and serious misconduct, along with other non-criminal employee misconduct investigations. The Guidebook's rational nexus to Defendant's law enforcement duties is shown by the Guidebook addressing topics such as OPR's Special Agent's conduct for grand jury investigations, including when to consult the appropriate prosecutor, (ECF No. 51-2 at 81–82), and the issuance of subpoenas whether in administrative or criminal matters, (*Id.* at 84–85). Accordingly, the undersigned finds that there is a rational nexus between the Guidebook and Defendant's law enforcement duties.

There is also a connection between the Guidebook and possible violations of federal law. The Guidebook contains information regarding computer systems that ICE maintains, including Joint Integrity Case Management System ("JICMS"), which is the primary information management system used in connection with OPR investigations. (ECF No. 45-1 at ¶ 23); *see Conti v. U.S. Dep't of Homeland Sec.*, No. 12 CIV. 5827 AT, 2014 WL 1274517, at *3 (S.D.N.Y. Mar. 24, 2014) ("JICMS is a database utilized by ICE OPR, which contains investigations undertaken by ICE OPR or referrals from ICE OPR in response to allegations of misconduct by ICE employees."). The Guidebook describes how this system and other systems are organized. "[S]hould the information be disclosed, it could risk interference with criminal and misconduct investigations, as the knowledge of where information is located and how to gain access to and navigate through the system would potentially allow bad actors to wrongfully get into these databases and systems and learn specifics regarding individual investigations." (ECF No. 45-1 at ¶ 39). These individual investigations include those of criminal wrongdoing committed by ICE

employees and contractors.  As such, the Guidebook has a connection to possible violations of federal law in that the Guidebook includes investigative procedures for criminal and serious misconduct.

Plaintiff cites to certain sections within the Guidebook that reference administrative investigations, such as Section 2.18 titled "Interviewing: ICE Employee Witnesses (*Administrative Investigations*)" and Section 2.19 titled "Interviewing: ICE Employee Subjects (*Administrative Investigations*)."  (ECF No. 51-2 at 53, 55) (emphasis added).  The sections Plaintiff identifies, located in Chapter 2 and Chapter 4, all reference investigations into administrative violations. (ECF No. 51-2 at 20) (Chapter 2, "This chapter provides guidance and direction to the ICE Office of Professional Responsibility (OPR) investigators (hereafter referred to as investigators), support personnel, and supervisors on how allegations of criminal and administrative misconduct are received, processed, investigated, documented, and disseminated."); (*Id.* at 128) (Chapter 4, Section 4.4, "A Fact Finder is an ICE manager at the GS-13, 14 or 15 level, who has been trained by OPR . . . to conduct inquiries regarding alleged administrative misconduct that has the potential to adversely impact the agency and its mission.").

Plaintiff's categorical challenge to the "administrative" sections of the Guidebook incorrectly assumes that the exemption applies only to law enforcement of criminal violations. "The term 'law enforcement' in Exemption 7 refers to the act of enforcing the law, both civil and criminal."  *Pub. Emps. for Env't Resp.*, 740 F.3d at 203; *Tax Analysts*, 294 F.3d at 77. Administrative proceedings are not obviously outside the scope of the exemption.  However, to address Plaintiff's concerns that these sections were patently unrelated to law enforcement, I have reviewed *in camera* the unredacted sections and am satisfied that they reveal a nexus to law enforcement.

Plaintiff further argues that material withheld in furtherance of Equal Employment Opportunity investigations is purely to protect the agency from litigation rather than to enforce compliance with the law.  However, as Plaintiff notes, Equal Employment Opportunity claims are subject to both federal laws and regulations and, as such, ICE OPR's investigation into said conduct would involve enforcing the law.  Indeed, as Defendant notes in its *Vaughn* Index, these redacted sections relate to "the specific investigatory processes, techniques and considerations utilized by OPR [Special Agents] in the acceptance and investigation of discrimination and harassment investigations."  (ECF No. 45-2 at 33); (*Id.* at 52) (noting the redacted portions refer to "[t]he specific considerations, processes, techniques, and steps applied by OPR [Special Agents] to determine if and how a case will proceed, as well as the parameters regarding the process undertaken to evaluate the viability of an investigation, including the process for legal sufficiency reviews, in furtherance of [Equal Employment Opportunity] investigations.").  Accordingly, Defendant has sufficiently demonstrated that there is a connection between the Guidebook and possible violations of federal law, whether criminal or civil.  As such, the Guidebook satisfies the threshold question of being compiled for law enforcement purposes.

### 3.    Law Enforcement Techniques, Procedures, or Guidelines

Having established that the Guidebook was compiled for law enforcement purposes, Defendant must now show that the redacted information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  *See* 5 U.S.C. § 552(b)(7)(E); *Shapiro v. Dep't of Just.*, 393 F. Supp. 3d 111, 115 (D.D.C. 2019).  If an agency has redacted information because it would disclose guidelines for law enforcement investigations or prosecutions, the agency must also demonstrate that such disclosure could reasonably be expected to risk circumvention of the law.  *Allard K.*

*Lowenstein Int'l Hum. Rts. Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010). An agency is not required, however, to demonstrate the risk of circumvention of the law for information withheld that would disclose techniques and procedures for law enforcement investigations or prosecutions. *See Broward Bulldog, Inc.*, 939 F.3d at 1194 (noting that it "is not clear" that the risk of circumvention of the law applies to techniques and procedures, and further noting that there was circuit court disagreement on the subject).

Plaintiff does not dispute whether Defendant has properly labeled the withheld information as techniques and procedures or guidelines, but instead Plaintiff argues that Defendant's *Vaughn* Index is impermissibly vague because Defendant does not specify whether the redacted portions of the Guidebook contain law enforcement techniques and procedures or law enforcement guidelines. Plaintiff argues that because Defendant has not delineated which portion pertains to techniques and procedures or guidelines, Plaintiff is unable to determine if Defendant is required to demonstrate a risk of circumvention of the law.

Defendant claims certain sections were withheld because they contain both law enforcement techniques and procedures and law enforcement guidelines. *See* (ECF No. 45-2 at 7–8) ("These subsections contain law enforcement techniques and guidelines."). Defendant's practice of withholding a section because it contains techniques and procedures and/or guidelines does not render its *Vaughn* Index impermissibly vague because Defendant has articulated the risk of circumvention of the law associated with the disclosure of each piece of information withheld. As such, the undersigned will evaluate Defendant's argument for the risk of circumvention of the law for each category withheld.

The only other dispute Plaintiff raises as to the sections withheld is that Defendant has failed to demonstrate a risk of circumvention of the law for the withheld sections and solely recites statutory language to support its burden.[5]

The bar for withholding information under exemption 7(E) is a "relatively low bar." *Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 310 (D.D.C. 2018). "'Internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation' may be protected under Exemption 7(E), and even if the documents 'are not how-to manuals for law-breakers.'" *Id.* (alterations and citations omitted). "[S]uch information may be withheld 'not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.'" *Parker v. ICE*, 238 F. Supp. 3d 89, 100 (D.D.C. 2017) (quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

Defendant first invokes exemption 7(E) to protect from disclosure information about ICE OPR's JICMS system used in connection with ICE OPR investigations. The information withheld includes specifics about the JICMS system, such as how cases are opened, what information is

---

[5] Plaintiff argues that, in evaluating the risk of circumvention of the law, the Court should consider who is requesting access to the Guidebook when considering the harm it would cause to release this information. Plaintiff asserts that the investigation procedures within the Guidebook are to be used against law enforcement officers and "[i]t is not reasonable to expect that law enforcement officers will use knowledge of law enforcement guidelines to circumvent the law." (ECF No. 51 at 12). However, as Defendant notes, "while information disclosed during discovery is limited to the parties and can be subject to protective orders against further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public and the identity of the requester is irrelevant to whether disclosure is required." *Stonehill v. I.R.S.*, 558 F.3d 534, 538–39 (D.C. Cir. 2009). Accordingly, whether the requestor here includes law enforcement officers does not impact the Court's inquiry of whether there is a risk of circumvention of the law.

uploaded to the system, specific system codes, where information is located in the system, and how to gain access to the system, etc.  (ECF No. 45-1 at ¶ 35).  Second, and similarly, Defendant withholds portions of the Guidebook pertaining to "[U.S. Customs and Border Protection] TECS,[6] Investigative Case management ('ICM'), Seized Asset and Case Tracking system, ('SEACATS'), as well as the ICE Subpoena System and JICMS."  (*Id.* at ¶ 36).  These databases are utilized by ICE OPR Special Agents in detecting and investigating cases of criminal and serious misconduct.  Defendant describes these subsections as containing specifics on the categories of information included in these systems, where information is located, how to navigate within and between the systems, how to gain access to the systems, and how investigative queries are run within the systems.  Defendant asserts that information from these categories are not commonly known and "could assist bad actors in navigating, altering and/or manipulating internal ICE investigative email systems, JICMS, CBP TECS, ICM, and SEACATS were they to gain access to the system, through illicit or other means, by providing specifics of how and where information can be accessed."  (*Id.* at ¶ 39).

Despite Plaintiff's contentions, Defendant provides more than statutory language to describe the risk of circumvention of the law.  Defendant asserts that the release of this information could risk "interference with criminal and misconduct investigations, as the knowledge of where information is located and how to gain access to and navigate through the system would potentially allow bad actors to wrongfully get into these databases and systems and learn specifics regarding individual investigations."  (*Id.*).  Courts facing similar types of withheld information have found the information exempt from disclosure under exemption 7(E).  *See Rojas-Vega*, 302 F. Supp. 3d

---

[6]  TECS is an "an overarching law enforcement information, collection, analysis, and sharing environment that securely links telecommunications devices and personal computers to a central system and database."  *Strunk v. U.S. Dep't of State*, 905 F. Supp. 2d 142, 146 (D.D.C. 2012).

at 310 (finding ICE properly withheld "internal URLs, case numbers, case categories, subject identification numbers, case identification numbers, and internal identifying codes and departure statuses"); *Parker*, 238 F. Supp. 3d at 100 (concluding that ICE properly withheld "sensitive database and event codes, identification numbers, law enforcement system URLs, internal website links, record identification numbers, event numbers, category codes, TECS codes, method codes, file numbers, . . . status codes, internal agency codes, case numbers, program codes, and system codes" under exemption 7(E)); *Ortiz v. U.S. Dep't of Just.*, 67 F. Supp. 3d 109, 123–24 (D.D.C. 2014) (concluding that ICE properly withheld "external system identification numbers, and other law enforcement agency database case numbers, or identifiers, means of access to intra-agency databases to include case file numbers, event numbers, internal codes, computer function commands, identification numbers, and other law enforcement codes and numeric references" under exemption 7(E)); *Skinner v. U.S. Dep't of Just.*, 893 F. Supp. 2d 109, 114 (D.D.C. 2012), *aff'd sub nom. Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12-5319, 2013 WL 3367431 (D.C. Cir. May 31, 2013) (finding computer access codes associated with the TECS database were law enforcement guidelines under Exemption 7(E)).  As these databases are utilized to conduct investigations of criminal and serious misconduct, which in the hands of the public could assist in circumventing these investigations, the undersigned finds that Defendant has sufficiently met its evidentiary burden and has demonstrated its entitlement to summary judgment regarding the above withheld categories.

Defendant's third category of sections withheld includes how "confidential informant ('CI') information, polygraph information, grand jury information, investigative notes, investigative reports, classified information, investigative evidence, and hard-copy case files are stored and safeguarded."  (ECF No. 45-1 at ¶ 37).  This information also contains where these files

can be located and how they are "safeguarded, marked, and protected against unauthorized access." (*Id.*). Defendant's fourth category contains information that discloses the specific internal ICE investigative email systems and information on how the transfer of investigative materials and communications takes place through ICE internal channels. (*Id.* at ¶ 38). Defendant explains that this category also includes case information, investigatory requests, and investigatory communications. (*Id.*). This information could be used "to decipher the meaning of codes, navigate within the law enforcement system, and compromise the integrity of the data either by allowing for the deletion or alteration of information" and could also "allow bad actors to wrongfully get into these databases and systems and learn specifics regarding individual investigations." (*Id.* at ¶ 39).

Other courts have agreed that "types of identifiers used by law enforcement agencies to conduct, organize, and manage investigations and prosecutions qualify, at least, as law enforcement guidelines, if not also law enforcement methods and techniques." *Long*, 149 F. Supp. 3d at 50. The Court finds that Defendant has articulated valid bases to withhold these redacted portions of the Guidebook, as the information assists in categorizing and safeguarding the information obtained in conducting investigations of criminal and serious misconduct, which in the hands of the public could assist in circumventing these investigations. *See, e.g.*, *Poitras v. Dep't of Homeland Sec.*, 303 F. Supp. 3d 136, 159 (D.D.C. 2018) (recognizing the disclosure of "internal procedures, including 'protected internal e-mail addresses, non-public intranet web addresses, and a secure internal e-mail tool,' would increase the likelihood that 'individuals under investigation [could] exploit the FBI's Information Technology system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with the FBI's non-public intranet protocol.'"); *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (finding the manner in which

20

ChoicePoint Reports are "searched, organized and reported to the FBI is an internal technique, not known to the public," and the "method was developed by ChoicePoint to meet the specific investigative needs of the FBI").

Defendant next groups together three categories of withheld sections: the fifth, sixth, and seventh categories. The fifth category includes information "pertaining to the purpose and investigatory uses of interviews, how interviews should be conducted, specific questions that should be asked, investigatory considerations of how interviews should be conducted, tools to utilize, and the evaluation of the truthfulness of witness statements." (ECF No. 45-1 at ¶ 42). The sixth category includes "specific guidance, investigatory processes, investigatory considerations, techniques, and steps pertaining to the use of certain law enforcement databases and systems in furtherance of OPR investigations." (*Id.* at ¶ 43). And the seventh contains "the investigative uses of subpoenas, summonses, seizure of property, polygraph examinations, foreign travel, confidential informants ('CIs'), and immigration relief benefits in furtherance of OPR investigations, as well as investigative steps taken in furtherance of OPR investigations." (*Id.* at ¶ 44).

This information "provides specific investigatory strengths and weaknesses of each, as well as specific questioning that should take place and investigative uses of each tool." (*Id.* at ¶ 45). These sections include when and why the tools and techniques should be utilized to develop accurate and sound investigative evidence in furtherance of ICE OPR investigations. (*Id.*). Disclosure of these sections would assist in circumvention of the law as it would compromise the tactics ICE OPR Special Agents utilize in conducting investigations. (*Id.*). If information on how ICE OPR's Special Agents execute investigations and what tactics they employ is disclosed,

individuals could use that information to counter operational and investigative actions taken by ICE OPR's Special Agents during investigations.  (*Id.*).

For these categories, the redacted portions contain the specific questions ICE OPR would ask in conducting investigations, including the types of information sought, the manner of questioning, and tools to utilize in an investigation including specific investigatory strengths and weaknesses of each.  If individuals "were aware of this information, they could coach future witnesses in similar cases on how to avoid providing incriminating information, hindering the future use of these investigative techniques." *See Frank LLP v. Consumer Fin. Prot. Bureau*, 327 F. Supp. 3d 179, 183–84 (D.D.C. 2018).  "It is logical to infer that releasing [ICE OPR's] investigational process . . . would increase the risk that a violator would alter his or her behavior to avoid prosecution." *See Frank LLP v. Consumer Fin. Prot. Bureau*, 480 F. Supp. 3d 87, 103–04 (D.D.C. 2020) (finding the Consumer Financial Protection Bureau ("CFBP") properly withheld "portions of the investigational transcripts that contain specific information about how the Bureau conducts official investigations, including the sequence and manner of questioning.  Although it is well-known that CFPB engages in interviews when investigating debt-collection violations, the agency's strategy and specific questions are confidential, and therefore not public or well-known.") (citations omitted); *Broward Bulldog, Inc.*, 939 F.3d at 1191–92 ("For example, when disclosure would expose specific vulnerabilities in law-enforcement investigative techniques and procedures, Exemption 7(E) applies.").  Accordingly, the Court finds that Defendant has satisfied its evidentiary burden that the redacted portions are withheld as techniques and procedures for law enforcement investigations and has demonstrated the risk of circumvention of the law based on their disclosure.

Defendant's eighth and final category of documents withheld includes "the specific investigatory processes, techniques and considerations utilized by OPR [Special Agents] in the acceptance of a criminal investigation, circumstances and specifics regarding the consultation with Assistant United States Attorneys (AUSAs), and/or other prosecuting agencies, specific investigatory practices and processes and what they should include, as well as internal processes and considerations to be made pertaining to Office of Principal Legal Advisor ('OPLA') legal sufficiency reviews and AUSA consultations to determine if an investigation should be ongoing." (ECF No. 45-1 at ¶ 47).  This category additionally includes "investigative processes and considerations utilized by ICE OPR in determining which specific OPR office/investigator will retain jurisdiction of a particular investigation, the use of certain reporting, the use of collateral investigations and investigations in conjunction with the DHS Office of Inspector General ('OIG') and DHS Office of Civil Rights and Civil Liberties ('CRLC') investigations."  (*Id.* at ¶ 48).  These subsections contain investigative strategies regarding the use of counsel as well as the use of parallel investigations, including whether OPR should retain jurisdiction over investigations with OPLA and the U.S. Attorney's Office.  The release of these sections "could assist third parties to navigate, alter, and/or manipulate law enforcement or curtail their behavior to avoid detection, should they gain knowledge of how and where OPR investigations will completed."  (*Id.* at ¶ 49).

"Exemption 7(E) clearly protects information that would train potential violators to evade the law or instruct them how to break the law.  But it goes further.  It exempts from disclosure information that could increase the risks that a law will be violated or that past violators will escape legal consequences."  *Mayer Brown LLP*, 562 F.3d at 1193 (emphasis omitted).  The information withheld by Defendant adequately describes that the information is a technique and procedure for law enforcement investigations, especially considering the withheld portions implicate ICE OPR's

coordination with other agencies, including U.S. Attorney's Offices, for ongoing investigations. Though the information here does not necessarily provide a blueprint for criminal schemes, knowledge of how ICE OPR conducts and coordinates its investigations with other agencies "could encourage decisions to violate the law or evade punishment." *Id.*; *see Jud. Watch, Inc. v. U.S. Dep't of Com.*, 337 F. Supp. 2d 146, 182 (D.D.C. 2004) (finding information about investigative techniques, including "how BXA tracks export enforcement actions and what investigative concerns specific kinds of cases present" properly withheld under exemption 7(E) as disclosure "would allow circumvention of the system by giving potential violators a key to what kinds of action BXA categorizes as significant and what kinds of action may be considered less significant. Accordingly, potential violators might decide to risk violations that they may be of lower enforcement priority."). Accordingly, the undersigned finds that Defendant has met its evidentiary burden in demonstrating the sections are reasonably withheld under exemption 7(E) and are entitled to summary judgment.

### 4. Segregability

Lastly, an agency must release any reasonably segregable portion of a record after removing exempt portions. 5 U.S.C. § 552(b). Only if nonexempt portions are "inextricably intertwined with exempt portions" can the agency withhold the entire record. *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (citing *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)). The agency may establish that it satisfied the segregability requirement by providing a "detailed justification" as to why the withheld records cannot be segregated further. *Id.* (quoting *Mead Data Cent., Inc.*, 566 F.2d at 261). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). If

the requestor rebuts that presumption, the agency bears the burden of showing that it has not withheld any segregable, nonexempt portions.  *Id.*

Defendant here has met its segregability obligations.  Defendant has produced a detailed *Vaughn* index that describes each of the portions of the Guidebook it withheld along with the corresponding exemption and the description of why each portion falls under the exemption.  *See* (ECF No. 45-2).  Defendant conducted a "line-by-line review" of withheld sections to provide all segregable, nonexempt information.  (ECF No. 45-1 at ¶¶ 53–54).  And Defendant maintains that "[f]or pages that were withheld in full, no reasonable segregation of information contained in those pages is possible, given that any nonexempt information is inextricably intertwined with exempt information."  (*Id.* at ¶ 54).  Plaintiff does not dispute Defendant's representations about segregability and with "the presumption in the agency's favor and the detail of its *Vaughn* index, ICE's representations about segregability are enough."  *Advancement Project*, 549 F. Supp. 3d at 148 (D.D.C. 2021); *see Abdelfattah v. ICE*, 851 F. Supp. 2d 141, 146 (D.D.C. 2012) (finding that ICE met its segregability obligations when it conducted a line-by-line review of withheld records, produced a detailed *Vaughn* index, and provided declarations justifying its withholdings); *Ortiz*, 67 F. Supp. 3d at 125 (same).  Accordingly, Defendant is entitled to summary judgment on this record.

## IV.    RECOMMENDATIONS

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Defendant's Renewed Motion for Summary Judgment (ECF No. 45) be **GRANTED**, and Plaintiff's Renewed Cross-Motion for Summary Judgment (ECF No. 51) be **DENIED**.

The undersigned further **RECOMMENDS** that Plaintiff's original Cross-Motion for Summary Judgment (ECF No. 27) be **DENIED, as moot**.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).  Any response to objections are due within **SEVEN (7) DAYS** from the date objections are served.

   **RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 14th day of February, 2024.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE